COLONY NYRO PARTNERS,
L.P., Plaintiff,

v.

WATERSIDE DEVELOPMENT CORP., Kenneth R. Soskza, Joel Wallach, Carl Kamhi, Jemi Construction Corp., Levitt–Fuirst Assoc. Ltd., James Ford Plumbing and Heating, Inc., John Argyros, Marian Argyros, The People of the State of New York, Board of Managers of Villas on the Lake Condominium, Old Yorktown Village Community Association, Inc., Defendants.

No. 92 Civ. 9516 (VLB).

United States District Court,
S.D. New York.

Dec. 13, 1993.

Harvey Strickon, Leslie Plaskon, Paul, Hastings, Janofsky & Walker, New York City, for plaintiff.

S. Martin Gordon, Spring Valley, NY, for defendant Carl Kamhi.

Warren S. Agatston, New Rochelle, NY, for defendants John and Marian Argyros.

Julius W. Cohn, Cerrato, Sweeney, Cohn, Stahl & Vaccaro, White Plains, NY, for defendant Board of Managers.

Linda S. Charet, F.D.I.C., New York City, for the FDIC.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

### I

This mortgage foreclosure action presents questions relating to the appropriate timing of the foreclosure and sale of residential condominium units while litigation with respect to the priority of claims to the sale proceeds and other related matters remain unresolved.

This lawsuit involves foreclosure and sale of 39 of 135 condominium units known as Villas on the Lake Condominium (the "Villas Condominium") on property owned by defendant Waterside Development Corporation ("Waterside") in Yorktown, New York. The action was first brought by the Howard Savings Bank, the original mortgagee bank, in the Supreme Court of the State of New York, County of Westchester alleging default by Waterside and two of its principals. The Federal Deposit Insurance Corporation ("FDIC"), having acquired the assets of the Howard Savings Bank as receiver under 12 U.S.C. § 1821 in October 1992, removed this case to federal court on December 31, 1992 pursuant to 12 U.S.C. § 1819 and 28 U.S.C. § 1446 and was substituted as plaintiff by stipulation and order dated August 18, 1993. After considerable pretrial litigation, including full submission of the motion now before me and while this motion was pending, the FDIC notified the parties and the court that its interests in the Howard Savings Bank were scheduled to be sold. Two weeks later, on November 18, 1993, Colony NYRO Partners, L.P. ("Colony" or the "plaintiff"), purchased the mortgages held by the FDIC covering the property at issue here and the FDIC assigned the mortgages to Colony, which was substituted as plaintiff by order dated November 24, 1993.

■ Although there is now no federal party to this suit based on state claims, jurisdiction to complete adjudication of this matter is found under the provisions of 28 U.S.C. § 1367.[1]

---

1. The newly-substituted private entity plaintiff also asserts that diversity jurisdiction exists un-

A referee was appointed by order dated April 21, 1993. The referee issued a report on June 9, 1993, finding that the amount due and owing to the FDIC (now to Colony) on its note and mortgage was $14,420,981.20 as of the date of the report, with interest accruing daily at $2,098.46. Having inquired into the advisability of selling the mortgaged premises in parcels, the referee found that the 39 mortgaged units should be sold in one parcel rather than in individual lots.

## II

██ Colony now seeks confirmation of the referee's report and judgment of foreclosure and sale against the property. The three answering defendants each oppose the plaintiff mortgagee's motion in part: the Board of Managers of Villas on the Lake Condominium (the "Board of Managers") objects to the sale of the property in one parcel; John Argyros and Maria Argyros (the "Argyroses") seek to prevent the mortgagee from foreclosing an alleged water easement benefitting the Argyros's property; and Carl Kamhi ("Kamhi"), claims that his own mortgage lien, which is also in default, has priority over the plaintiff's mortgage. Although he does not oppose foreclosure, Kamhi objects to certain provisions of the plaintiff's proposed Judgment of Foreclosure and Sale and submits a cross-motion together with a counter proposed Judgment of Foreclosure and Sale.

Kamhi, by letter to the court dated December 6, 1993, now contends that a sale at this time would be unfair since he does not know the amount of his equity of redemption, and therefore does not know what to bid.

Title in this case appears to be marketable, sufficient net sale proceeds probably will remain available for the satisfaction of any prevailing claims and there is otherwise no prejudice to the claims or defenses of any of the parties. Should it turn out to be otherwise, this court may refuse confirmation of the foreclosure sale. The public interest and interests of all parties will be served best by a prompt sale of the residential condominium units, which may deteriorate in value and are accruing expenses. Delay occasioned by prolonged litigation resulting in keeping housing units unoccupied and unavailable to the local community may be avoided. Foreclosure and sale prior to determination of remaining claims is appropriate in this case, where preservation of all claims or defenses for adjudication against the proceeds of sale is specifically provided by order·dated April 6, 1993.[2]

██ This court sees no problem affecting a bid by Kamhi. This is not the ancestral farm; it is merely investment property. The decision on what to bid is therefore driven only by the bidder's perception of the difference, if any, between the last bid, and the fair market value of the mortgaged premises sold according to the terms of sale. The argument of Kamhi's attorney is spurious in the context of the purely economic issues of this foreclosure sale.

der 28 U.S.C. § 1332 on the grounds that plaintiff is a limited partnership incorporated in Delaware and having its principal place of business in California, and none of the defendants are citizens of either of those states. There is no formal pleading which invokes diversity jurisdiction.

2. The expectation that the foreclosure and sale of these condominium units would proceed in the most expeditious manner possible was incorporated into the order of reference and amendment issued by Judge Broderick dated April 6, 1993, which also provides in relevant part that:

so much of the Answers of Defendants, CARL KAMHI and BOARD OF MANAGERS OF VILLAS ON THE LAKE CONDOMINIUM, as contest the foreclosure of the mortgage sought to be foreclosed in the Plaintiff's Complaint be and the same are hereby permitted to be withdrawn, and the prosecution of the action shall proceed without prejudice to the claims or defenses of any of the parties, including, without limitation:

(a) The position of the FEDERAL DEPOSIT INSURANCE CORPORATION that Defendant, CARL KAMHI, failed to exhaust the administrative claim process prior to being entitled to prosecute his claims in this action;

(b) The claim of Defendant, CARL KAMHI, as to the priority of the mortgage on which he is the mortgagee, his claim for money damages, and his Cross Complaints;

(c) The claim of Defendant, BOARD OF MANAGERS OF VILLAS ON THE LAKE CONDOMINIUM, to the priority of its lien which encumbers the condominium units presently owned by Defendant, WATERSIDE DEVELOPMENT CORP....

I confirm the referee's report to the extent set forth. The plaintiff's motion for judgment of foreclosure and sale is granted as modified by the Judgment of Foreclosure and Sale issued with this memorandum order, including denial of the plaintiff's request to extinguish any water easement benefitting the adjacent Argyros property. Kamhi's cross-motion is granted to the extent set forth below.

## III

John Argyros and Maria Argyros (the "Argyroses") are the owners of commercial property adjacent to Waterside on which the Argyroses constructed the diner which they continue to operate as their sole source of income. At a time subsequent to the recording of the bank mortgages sought to be foreclosed here but after the Declarations of Condominium pursuant to state law were recorded, the Argyroses claim to have obtained an easement for consideration and in writing, allegedly signed by a Waterside agent, which was also duly recorded. The Declarations of Condominium for Waterside provided that easements to adjacent landowners under certain circumstances were contemplated and the easement itself was a matter of record when the FDIC acquired the assets of the bank. The Argyroses also claim that they were given oral approval of the easement by an officer of the original bank prior to the acquisition of the bank's assets by the FDIC.

The Argyroses assert that the waterline installed underground provides water service not otherwise available at the time of construction of the diner, that they maintain and repair the waterline at their sole cost, that they pay by separate meter for all water used, that they have been and now are in compliance with all municipal regulations, and that the easement does not prevent the condominium units from being used as dwellings. The easement, according to the Argyroses and not disputed by the plaintiff, runs across a steep slope at the back of the property which cannot be built upon or used. Consequently the underground water ease-

ment neither adds to nor detracts from the value of the property being foreclosed.

In defense of their claim, the Argyroses assert various legal as well as equitable arguments, including the question of whether the mortgagee of only a portion of the property has standing by itself to extinguish an otherwise valid easement.[3] The plaintiff challenges the propriety of permitting the easement to survive the foreclosure, relying on among other things the nature of the dealings leading to the alleged agreement, the prior recording of the bank mortgage and loan agreements, and the ineffectiveness of oral agreements with respect to the rights of the FDIC under 12 U.S.C. §§ 1823(e), 1821(d)(9).

The basic reality of the foreclosure and sale of the condominium units at this juncture is that all easements or other rights of any other persons not mortgagors are not prejudiced or otherwise affected. The foreclosure will give the mortgagee or purchaser of the property the same rights with respect to the easement, and in all others ways, that the mortgagor had. No evidence has been presented that marketability of title to the property is measurably, if at all, impaired by permitting the easement to survive at the present time.

Under Federal Rule of Civil Procedure 1, sentence 2, as amended, effective December 1, 1993, the rules "shall be construed *and administered* to secure the just, speedy, and inexpensive determination of every action" (amendment emphasized). The court is to exercise its discretion to promote these goals, which include in this instance providing the mortgagee with important property interests but should not permit potential disputes with third parties that have not been shown to be economically significant and would probably have remained dormant if not for the foreclosure, to disrupt or delay these proceedings.

The foreclosure sale shall be conducted subject to the rights of the Argyroses according to the document recorded with the County Clerk, Westchester County, on May 4, 1990 at Liber 9796, page 54.

---

**3.** I do not rule on the validity of the Argyroses'   easement.

## IV

The Board of Managers of the Villa Condominium opposes the plaintiff's motion only insofar as the Referee, in his report dated June 9, 1993, recommended that the property be sold as one parcel.

It is in the interest of all parties that the method of sale promote the highest possible sale price. To achieve that goal while recognizing the plaintiff's concern about possible manipulation of the bidding process where the units are sold individually, I direct that the auction be a dual offering, with the property put up first as a single parcel and then as individual units in such order as the referee shall consider most advantageous. After notice and hearing, the court will confirm the sale with the highest results.

## V

Defendant Carl Kamhi, alleging among other things a lien against the property of $195,000 for principal due [4] on his mortgage, resists foreclosure prior to adjudication of his claims, and also suggests the action be remanded to the state court.

The Judgment of Foreclosure and Sale directs that the parties including Kamhi provide the court within 20 (twenty) days of the date of that order calculations of such amounts as they believe should be deposited with the court and how those amounts are arrived at.

Kamhi's crossclaims against the individual defendants as alleged guarantors survive without prejudice and are in any case independent of the property to be sold. Since all of Kamhi's claims are preserved for future adjudication and any net proceeds yielded by the sale will be reserved in an interest-bearing escrow account to an appropriate extent, he will not be adversely affected.

## VI

The adjudication of outstanding claims will proceed concurrently with the foreclosure and sale of the property at issue. A pretrial

conference to schedule discovery and other matters will be held in the chambers of Judge Broderick on January 14, 1994 at 10:30 a.m.

**SO ORDERED.**

---

4. The original mortgage agreement involving Kamhi did not provide for interest. See exhibit attached to Kamhi's Verified Answer, Cross Complaint and Counter–Claim.